UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>FRESH PRODUCE HOLDINGS, LLC<br><br>Debtor. | Case No. 15-13485-MER<br><br>Chapter 11 |

**MOTION OF DEBTOR FOR ENTRY OF CONSENSUAL INTERIM ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIED**

The above-captioned debtor and debtor in possession (the "**Debtor**") hereby files this motion (this "**Motion**") pursuant to sections 105(a), 361, 362 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-3 of the Local Bankruptcy Rules for entry of an interim consent order (the "**Interim Order**"), substantially in the form attached as **Exhibit A**, (I) authorizing use of cash collateral, (II) granting the prepetition lender, Wells Fargo Bank, N.A. ("**Secured Lender**") adequate protection, (III) scheduling a final hearing, and (IV) granting related relief.  In support of this Motion, the Debtor relies upon and incorporates by reference the Omnibus Declaration of Jo Stone in Support of Chapter 11 Petition and First Day Motions (the "**First Day Declaration**") filed contemporaneously herewith.  In further support of this Motion, the Debtor respectfully represents as follows:

**SUMMARY OF RELIEF REQUESTED**

1. Pursuant to Bankruptcy Rule 4001(b) and L.B.R. 4001-3, a summary of the material terms and conditions governing the Debtor's proposed use of Cash Collateral (defined below), as contained in the Interim Order, is as follows:

1

(a) **Name of Each Entity with an Interest in Cash Collateral.** Secured Lender is the only entity with an interest in Cash Collateral.

(b) **Purpose for the Use of Cash Collateral.** To fund general overhead, administrative expenses and operating expenses pursuant to the budget attached to the Interim Order (the "**Budget**") to enable the Debtor to sell its assets for maximum value.

(c) **Material Terms.**

- Authorization to Use Cash Collateral. Subject to the additional limitations below, the Debtor is hereby authorized to use Cash Collateral for the purpose of preserving and maximizing the value of the Debtor's estate, up to the amounts set forth in the Budget, for the period from the Petition Date until April 30, 2015; *provided*, *however*, (i) the Debtor shall not exceed the weekly disbursement amounts specified in the Budget by more than 5% in the aggregate on a cumulative weekly basis and (ii) the Debtor shall collect no less than 85% of cash receipts specified in the Budget on a cumulative weekly basis. Unless Secured Lender consents in writing, the Debtor shall not pay any items that are not described in the Budget or that fall outside the categories described in the Budget.

    The Debtor may not use Cash Collateral to the extent that, after accounting for cash on hand (excluding the Professional Fee Reserve (defined below)), the amount outstanding would exceed the Borrowing Base (as defined in the Credit Agreement (defined below)); provided that Secured Lender shall not add any new reserves or increase reserves during the term of the Interim Order.

    *See* Interim Order § 2.

- Termination. Secured Lender's consenting to use of Cash Collateral and the Debtor's authority to use Cash Collateral under the Interim Order shall terminate upon the earlier of (i) the occurrence of any Event of Default (as defined below) or (ii) April 30, 2015 (the earlier of which shall be the "**Termination Date**").

    *See* Interim Order § 7.

- Events of Default. The Debtor shall be deemed in default under the Interim Order upon the occurrence of any of the following (each an "**Event of Default**"): (a) the Debtor's failure to perform any of its obligations pursuant to the Interim Order including, without limitation, paying Secured Lender the scheduled monthly interest payments and other adequate protection payments as provided in paragraph 4 thereof; (b) the Debtor's failure to comply with the Budget, subject to the variance, as described and set forth in paragraph 2 thereof; (c) the appointment of a trustee pursuant to either Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code; (d) the appointment of an examiner with expanded powers; (e) the conversion or dismissal of this case; (f) the entry of an order providing for relief from the automatic stay on any item comprising the Pre-Petition Collateral with a value in excess of $25,000; (g) failure of the Debtor to file a motion by April 8, 2015 seeking authority to sell or conduct a going out of business sale of substantially all of its assets; (h) failure to obtain approval of the Interim Order as a final order on or before April 30, 2015; (i) failure to obtain entry of an order approving sale and bidding procedures by April 17, 2015, (j) failure to obtain the entry of an order by May 14, 2015 approving a sale or the conducting of a going out of business sale of substantially of all of the Debtor's assets; (k) failure to close either an asset purchase agreement or an agency agreement to conduct a going out of business sale of the Debtor's assets by May 15, 2015 and to deliver the proceeds thereof (up to the remaining amount of Pre-Petition Secured Debt then due and owing) to Secured Lender by May 19, 2015; (l) except as specifically consented to by Secured Lender in writing, any failure by the Debtor to immediately deliver to Secured Lender any and all net proceeds derived from the sale outside the ordinary course of business of any property constituting the Pre-Petition Collateral (up to the remaining amount of Pre-Petition Secured Debt then due and owing); (m) the entry of any order amending, modifying, violating, contradicting, reversing, revoking, staying, rescinding or vacating the Interim Order without the express prior written consent of Secured Lender (which may be withheld in Secured Lender's sole discretion and shall not be implied from any other action, inaction or acquiescence by Secured Lender); (n) conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; or (o) the creation of a lien or security interest in favor of any person or entity other than Secured Lender on the Pre-Petition Collateral that is equal or greater in priority to the liens granted to Secured Lender.

  *See* Interim Order § 8.

- Professional Fee Reserve. The Debtor shall, on Tuesday each week for the Budget period, make a deposit of up to $60,000 for a total not to exceed $240,000 into a separate bank account in the Debtor's name for the benefit of professionals retained by the Debtor or any statutory committee pursuant to 11 U.S.C. § 327 and 1103 (the "**Professional Fee Reserve**"). Payment of interim and final fees and expenses, from time to time, as awarded by the Court or payable pursuant to any interim compensation procedures approved by this Court, shall first be made from funds in the Professional Fee Reserve. Any excess funds in the Professional Fee Reserve after payment of all final awards of fees and expenses shall be made

3

available to the Debtor's estate. Except as to any excess funds returned to the Debtor for general purposes pursuant to the preceding sentence, funds in the Professional Fee Reserve shall not be subject to the liens or superpriority claims of the Secured Lender. Further, none of the funds in the Professional Fee Reserve may be used to fund, pay or reimburse any professional fee or expense incurred in connection with disputing or challenging the scope, extent, validity or priority of Secured Lenders claims or liens.

*See* Interim Order § 16.

(d) **Adequate Protection.** The Debtor's agreement to use Cash Collateral postpetition provides for the granting of adequate protection to Secured Lender as follows (collectively, "**Adequate Protection**"):

- Replacement Lien. To the extent of the Cash Collateral used by the Debtor after the Petition Date, Secured Lender shall be granted and provided with a security interest in and lien upon all pre-petition and post-petition inventory, chatter paper, accounts, furniture, fixtures, equipment and general intangibles and all proceeds thereof and all proceeds of the Pre-Petition Collateral (defined below) (the "**Adequate Protection Collateral**"). Adequate Protection Collateral shall not include any of the Debtor's avoidance actions arising under Sections 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (the "**Avoidance Actions**") or the proceeds therefrom.

    *See* Interim Order ¶ 3(a).

- Super-Priority Expense Claim. To the extent that there is a diminution in the value of Secured Lender's Pre-Petition Collateral after the Petition Date that is not offset by the value of the Adequate Protection Collateral, Secured Lender shall be granted an allowed super-priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code which shall have priority over any and all other indebtedness, liabilities and obligations of the Debtor, now in existence or hereafter incurred by the Debtor, and over all administrative expenses or priority claims of any kind including, without limitation, those specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 364(c), 503(b), 507(a), 507(b), 546(c), 546(d), 726, 1113 or 1114 of the Bankruptcy Code; *provided*, *however*, Secured Lender's super-priority administrative claim shall be subordinate to: (i) all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) up to $7,500 for fees, costs and expenses of any chapter 11 or chapter 7 trustee; *provided*, *further*, *however*, that the super-priority administrative claim shall not be payable from Avoidance Actions or the proceeds therefrom.

    *See* Interim Order ¶ 3(b).

018059\0001\12094870.3

- <u>Section 552</u>. Secured Lender's liens upon and security interests in the Pre-Petition Collateral shall continue in the proceeds and profits of the Pre-Petition Collateral, as provided in Section 552(b) of the Bankruptcy Code, without exception as further described in the Loan Documents, including, without limitation, all post-petition inventory and accounts receivable.

*See* Interim Order ¶ 3(c).

- <u>Adequate Protection Payments</u>. The Debtor shall timely make the scheduled monthly interest payments pursuant to the Loan Documents to Secured Lender on the Pre-Petition Secured Debt at the non-default interest rate as required by the Loan Documents. In addition, if as of April 30, 2015, the aggregate of the Net Cash Flow (as set out in line 48 of the Budget) exceeds the Budget ("Surplus Net Cash Flow Amount"), and the Debtor determines in good faith that increased inventory purchases consistent with the Budget are not necessary to maximize returns to the Debtor's creditors, then on May 4, 2015, Debtor shall make an additional adequate protection payment to Secured Lender equal to the Surplus Net Cash Flow Amount Such payments, if any, shall be applied to reduce the Pre-Petition Secured Debt. Further, nothing herein shall prevent Secured Lender from seeking payment of additional interest, fees or charges as set forth in the Loan Documents and as may be allowable under Section 506(b) of the Bankruptcy Code.

*See* Interim Order ¶ 4.

(e) **LBR 4001-3(a)(1) Provisions to Highlight.** In accordance with Local Rule 4001-3(a)(1), the Debtor highlights the following provision of the Interim Order:

- <u>Determination of Validity, Enforceability, Priority and Amount of Prepetition Liens</u>. The Debtor acknowledges that, pursuant to the Loan Documents, the Pre-Petition Secured Debt is secured by a valid and perfected first priority lien and security interest in the Pre-Petition Collateral. *See* Interim Order ¶¶ D, E. Parties in interest have until May 19, 2015 to assert any challenges. *Id*. § 18.

## JURISDICTION AND VENUE

2.  The Court has jurisdiction over the Debtor, its estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5

**BACKGROUND**

A.   **General Background.**

3.   On the date hereof (the "**Petition Date**"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

4.   The Debtor is operating its businesses and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.   No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

6.   The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in more detail in the First Day Declaration.

7.   Secured Lender asserts a first priority lien and security interest in all of the Debtor's assets (the "**Prepetition Collateral**"), including all of the Debtor's cash (the "**Cash Collateral**"), pursuant to a Credit and Security Agreement, dated as of September 26, 2014, by and among (i) Secured Lender, as lender, (ii) Debtor Fresh Produce Holdings, LLC ("**FPH**"), as borrower, and (iii) the others Debtors as guarantors (the "**Credit Agreement**").

8.   The Credit Agreement secures the payment of FPH's obligations under a Revolving Note in the amount of $10,000,000, also dated September 26, 2014 (the "**Revolving Note**" and together with the Credit Agreement, and any amendments, modifications, supplements and continuing guarantees thereto, the "**Loan Documents**"). Pursuant to the Credit Agreement and Revolving Note, Lender agreed to make revolving loans to FPH in an amount not to exceed the lesser of: (i) the "Maximum Revolver Amount" (defined in the Credit Agreement as $10 million, decreased by permanent reductions pursuant to the terms of the Credit Agreement) *less* the "Letter of Credit Usage" (*i.e.*, outstanding letters of credit issued by Secured

6

Lender to or for the benefit of FHB); or (ii) the "Borrowing Base" *less* the Letter of Credit Usage. *See* Credit Agreement ¶ 2.1(a). Pursuant to the terms of the Credit Agreement, the Borrowing Base generally equals 85% of FHP's eligible accounts, as adjusted upwards and downwards pursuant to the factors set forth in Schedule 1. 1 of the Credit Agreement. *See* Schedule 1.1 to Credit Agreement at 3.

9. As of the Petition Date, FPH was indebted to Secured Lender in the approximate amount of $3,941,572.76, exclusive of contingent liabilities, swap liabilities and fees and expenses owed pursuant to the Loan Documents.

**BASIS FOR RELIEF**

10. Under the circumstances here, the Debtor's request to use Cash Collateral should be approved. The Debtor will suffer immediate and irreparable harm without the use of the Cash Collateral on an interim basis. The Debtor plans to sell substantially all of its assets within the first month or two of this case (the "**Sale**") and have several motions pending to effectuate the Sale and continue operations until the Sale. The Debtor has an immediate need to access capital in order to sustain operations through Sale and administer these cases. Without such capital, the Debtor would not be able to fund these cases or pay for the services and expenses necessary to preserve and maximize the value of its assets. Indeed, absent sufficient funding to support its businesses, the Debtor would not be able to continue to negotiate with potential purchasers and its ability to consummate the Sale within this timeframe will be significantly hampered, if not completely destroyed, and the value of its assets will quickly erode. Entry of the Interim Order is thus not only necessary, it will help maximize ultimate recovery for creditors through the Sale. The Debtor has negotiated in length with Secured Lender and the form of the Interim Order is part of this arms' length negotiations. Accordingly, the Debtor requests that the Court enter the

Interim Order within three days of this Motion, consistent with L.B.R. 2081-1, and schedule a final hearing on the matter as soon as practicable.

A.  **Use of Cash Collateral**

11. Section 363 of the Bankruptcy Code governs the Debtor's use of property of its estate.[1] Section 363(c)(1) provides:

> If the business of the debtor is authorized to be operated under Section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

12. Section 363(c)(2) provides that a trustee or debtor in possession may not use, sell, or lease "cash collateral" under section 363(c)(1) unless:

(a) each entity that has an interest in such collateral consents; or

(b) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of [section 363].

11 U.S.C. § 363(c)(2).

13. Here, the Debtor's use of Cash Collateral, subject to the terms and conditions set forth in the Interim and Final Order, is authorized under Bankruptcy Code section 363(c)(2)(A) because Secured Lender has consented to the Debtor's use of such Cash Collateral.

B.  **The Proposed Adequate Protection Should Be Approved**

14. Bankruptcy Code § 363(e) provides, in relevant part:

---

[1] Pursuant to section 1107 of the Bankruptcy Code, a debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code. See 11 U.S.C. § 1107(a).

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest. . . .

15. The Bankruptcy Code does not explicitly define "adequate protection," but section 361 does provide the means by which a debtor may provide adequate protection, including (i) cash payments, (ii) an "additional or replacement lien" to the extent use of Cash Collateral results in a decrease in the value of such entity's interest in such property, and (iii) granting such "other relief" resulting in the "indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361.

16. "Adequate protection is, essentially, protection for the creditor to assure its collateral is not depreciating or diminishing in value and is made on a case-by-case basis." *In re Gunnison Ctr. Apts., LP*, 320 B.R. 391, 396 (Bankr. D. Colo. 2005). The Tenth Circuit has provided clear and powerful direction to bankruptcy courts applying the "adequate protection" standard to the use of cash collateral, especially in early stages of a Chapter 11 case:

> Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtors' efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the question of whether use of cash collateral shall be permitted during the early stages of administration.
>
> The first effort of the court must be to insure the value of the collateral will be preserved. Yet, prior to confirmation of a plan of reorganization, the test of that protection is not by the same measurements applied to the treatment of a secured creditor in a proposed plan. In order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard.

9

*MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1397-98 (10th Cir. 1987) (emphasis added) (citations omitted); *see also In re Morning Star Ranch*, 64 B.R. 818, 822 (Bankr. D. Colo. 1986). In *O'Connor*, the Tenth Circuit affirmed a finding of adequate protection based upon replacement liens in new, unproven oil and gas wells (in a proven field) as consistent with the "values and risks" bargained for by the secured lender in that case. *Id*.

17. Secured Lender has expressly consented to the adequate protection proposed in this Motion and set forth in the proposed order on an interim and a final basis. Moreover, the proposed adequate protections are reasonable, appropriate and sufficient to satisfy the standard of "adequate protection" and maintain the value of the Pre-Petition Collateral. *O'Connor*, 808 F.2d 1393, 1397-98. Accordingly, Secured Lender will be properly and adequately protected.

C. **The Debtor Will Suffer Immediate and Irreparable Harm if They Cannot Use Cash Collateral on an Interim Basis**

18. Bankruptcy Rule 4001(b)(2) provides:

> The court may commence a final hearing on a motion for authorization to use cash collateral no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a preliminary hearing before such 14 day period expires, but the court may authorize the use of only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

19. For the reasons set forth above, Cash Collateral is critical to the Debtor's operations and its ability to sell its assets and thereby maximize the value of its assets. Accordingly, the Debtor will suffer immediate and irreparable harm without the use of the Cash Collateral on an interim basis. Thus, the Debtor seeks authorization on an interim basis to use Cash Collateral in accordance with the terms and conditions of the Interim Order and the Budget attached thereto. Based on the foregoing, the Debtor submits that the interim relief requested in this Motion, pending a final hearing, is necessary, appropriate and fully warranted, and is essential to avoid immediate and irreparable harm to the Debtor and its estates and creditors.

10

**D.      Request for Final Hearing**

20.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(d)(3), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable, and fix the time and date prior to the Final Hearing for parties to file objections to the Motion.

## NOTICE

21.     No trustee, examiner or creditors' committee has been appointed in these chapter 11 cases. Notice of this Application has been provided to: (a) the United States Trustee; (b) those parties listed on the consolidated list of creditors holding the twenty (20) largest unsecured claims against the Debtor, as identified in its chapter 11 petitions; (c) counsel for Secured Lender; and (d) those parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

WHEREFORE, the Debtor respectfully requests that the Court enter the Interim Order substantially in the form attached hereto as **Exhibit A** granting the relief requested herein, (I) authorizing use of cash collateral, (II) granting Secured Lender adequate protection, (III) scheduling a final hearing, and (IV) granting related relief.

Dated this 6th day of April, 2015.

        Respectfully submitted,

        BROWNSTEIN HYATT FARBER SCHRECK, LLP

        *s/Michael J. Pankow*
Michael J. Pankow, #21212
Joshua M. Hantman, #42010
Rafael R. Garcia-Salgado, #47382
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111
mpankow@bhfs.com
jhantman@bhfs.com
rgarcia@bhfs.com

*Proposed Attorneys for Debtor*

018059\0001\12094870.3