## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Case No. 15-13485-MER |
| FRESH PRODUCE HOLDINGS, LLC | Chapter 11 |
| Debtor. | |

### MOTION OF DEBTOR FOR ENTRY OF ORDER (I) PROHIBITING UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES TO, OR DISCRIMINATING AGAINST, THE DEBTOR ON ACCOUNT OF PREPETITION INVOICES, (II) DETERMINING THAT THE UTILITIES ARE ADEQUATELY ASSURED OF FUTURE PAYMENT, AND (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT

The above-captioned debtor and debtor in possession hereby files this motion (this "**Motion**") for the entry of order pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), (i) prohibiting utilities from altering, refusing, or discontinuing services to, or discriminating against, the Debtor on account of prepetition invoices, (ii) determining that the utilities are adequately assured of future payment, and (iii) establishing procedures for determining adequate assurance of payment.  In support of this Motion, the Debtor relies upon and incorporate by reference the Omnibus Declaration of Jo Stone in Support of Chapter 11 Petition and First Day Motions (the "**First Day Declaration**"), filed on April 6, 2015 [Dkt. No. 14].  In further support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtor, its estates, and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are sections 105(a) and 366 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

1

## BACKGROUND

### A.    General Background.

2.    On April 6, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor's affiliates filed their own voluntary chapter 11 petitions on April 2, 2015.[1]

3.    The Debtor is operating its businesses and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no committees have been appointed or designated.

5.    The factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of these chapter 11 cases, is set forth in more detail in the First Day Declaration.

### B.    The Debtor's Accounts with Utility Providers.

6.    The Debtor operates 27 stores in 7 states throughout the United States and also maintains a finishing, fulfillment and distribution center in Gardena, CA and a headquarters and support center in Boulder, CO (collectively, the "**Facilities**").  The Facilities require the continuous provision of utility services, such as electricity, natural gas, oil, water, sewer, telecom, trash collection and/or other services (each, a "**Utility Service**" and collectively, the "**Utility Services**") from local and/or regional utilities as that term is used in section 366 of the Bankruptcy Code (each a "**Utility Provider**" and collectively, the "**Utility Providers**").  The

---

[1] The Debtor's affiliates in the chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, include: Fresh Produce Retail, LLC (5124), Case No. 15-13415-MER; Fresh Produce Sportswear, LLC (1339), Case No. 15-13416-MER; Fresh Produce of St. Armands, LLC (2806), Case No. 15-13417-MER; FP Brogan – Sanibel Island LLC (2574), Case No. 15-13420-MER; and Fresh Produce Coconut Point, LLC (5784), Case No. 15-13421-MER.  The location of the Debtor and its affiliates' service address is:  2865 Wilderness Place, Boulder, Colorado 80301.

Utility Providers that provide Utility Services to the Debtor as of the Petition Date are those listed on **Exhibit A** attached hereto (the "**Utility Service List**").[2]

7.      At all relevant times, the Debtor has attempted to remain current with respect to its utility bills.  Further, to the best of the Debtor's knowledge, the Debtor is near current on all amounts owing to the Utility Providers, other than payment interruptions that may be caused by the commencement of it and its affiliates' chapter 11 cases.

8.      Interruption and/or termination of the Utility Services during these chapter 11 cases would negatively affect the Debtor's operations, thereby seriously jeopardizing the Debtor's operations and reorganization efforts and, ultimately, recoveries for creditors. Accordingly, the Debtor seeks to establish an orderly process for providing adequate assurance to its Utility Providers without jeopardizing the Debtor's operations.

## RELIEF REQUESTED

9.      By this Motion, the Debtor respectfully requests, pursuant to sections 105(a) and 366 of the Bankruptcy Code (a) entry of an order (the "**Order**"), substantially in the form annexed hereto as **Exhibit B**, (i) prohibiting Utility Providers from altering, refusing, or discontinuing Utility Services to, or discriminating against, the Debtor on account of prepetition invoices, (ii) determining that the Utility Providers are adequately assured of future payment, and (iii) establishing procedures for determining adequate assurance of payment.[3]

---

[2] The Debtor reserves the right to argue that any of the entities now or hereafter included on the Utility Service List are not "utilities" within the meaning of section 366(a) of the Bankruptcy Code.

[3] The Debtor reserves the right, with respect to any of the Utility Providers, to seek entry of an order granting the relief requested herein on an interim basis pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure.

3

A.      **The Adequate Assurance Deposit.**

10.     Pursuant to section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse or discontinue a chapter 11 debtor's utility service if the utility does not receive from the debtor or the trustee adequate "assurance of payment" within thirty (30) days of the commencement of the debtor's chapter 11 case.  Section 366(c)(1)(A) of the Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit.  Upon entry of the Order, the Debtor proposes to provide "assurance of payment" to Utility Providers by placing a cash deposit (the "**Adequate Assurance Deposit**") equal to the cost of Utility Services for a period of two weeks, calculated based on the historical weekly average costs, into a newly created, segregated account (the "**Utility Deposit Account**") for the benefit of any Utility Provider, unless any such Utility Provider agrees in writing to a lesser amount, is paid in advance for Utility Services, or already holds a deposit equal to or greater than two weeks of Utility Services. The Debtor estimates that the total amount of such deposit would be approximately $25,000.  No creditor of the Debtor shall have any interest in or lien on the Adequate Assurance Deposit or the Utility Deposit Account.

11.     Where the Debtor has already provided a Utility Provider a deposit equal to, or greater than, two weeks of Utility Services, the Debtor submits that such Utility Provider should be deemed to have been provided with adequate assurance of payment as required by section 366 of the Bankruptcy Code.

12.     The Debtor proposes that the Adequate Assurance Deposit be maintained until the earlier of (a) entry of an order of the Court authorizing the return of the Adequate Assurance Deposit to the Debtor, (b) the consummation of a sale of the Debtor's assets under section 363 of the Bankruptcy Code that provides for the release of the Adequate Assurance Deposit, and (c) the effective date of a Chapter 11 plan in the Debtor's case.

13.     In addition, the Debtor seeks authority to reduce the Adequate Assurance Deposit to the extent that it includes an amount on account of a Utility Provider that the Debtor subsequently determines, in its sole discretion, should be removed from the Utility Services List.

14.     The Debtor submits that the availability of the Adequate Assurance Deposit, together with the Debtor's ability to pay for future Utility Services during the chapter 11 cases in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**"), constitute adequate assurance of payment to the Utility Providers for purposes of section 366 of the Bankruptcy Code.

15.     Accordingly, the Debtor believes that no other or further assurance of payment is necessary.  If, however, a Utility Provider believes that additional or alternative assurance of payment is necessary, the Debtor submits that the Utility Provider must request such additional or alternative assurance of payment pursuant to the procedures described below (the "**Adequate Assurance Procedures**").

**B.     The Adequate Assurance Procedures.**

16.     To address the right of any Utility Provider under section 366(c)(2) of the Bankruptcy Code to seek additional adequate assurance satisfactory to it, the Debtor proposes that the following Adequate Assurance Procedures be adopted:

(a)     Any Utility Provider desiring assurance of future payment for utility service beyond the Proposed Adequate Assurance must serve a request (an "**Additional Assurance Request**") within 30 days after the Petition Date so that it is received by the Debtor at the following addresses:  (i) Fresh Produce Holdings, LLC, 2865 Wilderness Pl, Boulder, CO 80301 (Attn: Jo Stone), and (ii) counsel for the Debtor, Brownstein Hyatt Farber Schreck, 410 17th Street, Ste. 2200, Denver, CO 80202 (Attn:  Michael J. Pankow, Esq.).

(b)     Any Additional Assurance Request must (i) be made in writing, (ii) specify the amount and nature of assurance of payment that would be satisfactory to the Utility Provider, (iii) set forth the location(s) for which

utility services are provided and the relevant account number(s), (iv) describe any deposits, prepayments or other security currently held by the requesting Utility Provider, and (v) explain why the requesting Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance as future payment.

(c)     Upon the Debtor's receipt of an Additional Assurance Request at the addresses set forth above, the Debtor shall have 30 days from the date of receipt of such request (collectively, the "**Resolution Period**") to negotiate with the requesting Utility Provider to resolve its Additional Assurance Request. The Debtor and the applicable Utility Provider also may agree to extend the Resolution Period.

(d)     The Debtor, in its discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Provider and without further order of the Court, and may, in connection with any such resolution, in its discretion, provide the requesting Utility Provider with additional assurance of future payment in a form satisfactory to the Utility Provider, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtor believes such additional assurance is reasonable. The Debtor may reduce the amount of the Adequate Assurance Deposit by any amount allocated to a particular Utility Provider to the extent consistent with any alternative adequate assurance arrangements mutually agreed to by the Debtor and the affected Utility Provider.

(e)     If the Debtor determines that an Additional Assurance Request is not reasonable or are not able to resolve such request during the Resolution Period, the Debtor, during or promptly after the Resolution Period, will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Provider (the "**Determination Hearing**"), pursuant to section 366(c)(3)(A) of the Bankruptcy Code.

(f)     Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Provider making such request shall be restrained from discontinuing, altering or refusing service to the Debtor on account of unpaid charges for prepetition services, the commencement of these chapter 11 cases, or any objections to the Proposed Adequate Assurance, or requiring the Debtor to furnish any additional deposit or other security for the continued provision of services.

(g)     The Proposed Adequate Assurance shall be deemed adequate assurance of payment for any Utility Provider that fails to make an Additional Assurance Request.

018059\0001\12080205.4

C.      **Subsequent Modifications of Utility Service List.**

17.      It is possible that, despite the Debtor's efforts, certain Utility Providers have not yet been identified by the Debtor or included on the Utility Service List (each, an "**Additional Utility Provider**" and collectively, the "**Additional Utility Providers**").  Thus, promptly upon the discovery of an Additional Utility Provider, the Debtor will increase the Adequate Assurance Deposit by an amount equal to approximately two weeks of the Debtor's estimated aggregate utility expense for each Additional Utility Provider, unless such Additional Utility Provider agrees in writing to a lesser amount, is paid in advance for Utility Services, or already holds a deposit equal to, or greater than, two weeks of Utility Services.  In addition, the Debtor requests that the Court provide that the Additional Utility Providers are subject to the terms of the Order, including the Adequate Assurance Procedures.

18.      Further, it is possible that during the course of these chapter 11 cases, certain Utility Accounts with respect to which funds have been contributed to the Adequate Assurance Deposit will be closed in the ordinary course of the Debtor's business (each, a "**Closed Account**" and collectively, the "**Closed Accounts**").  The Debtor requests that if any Utility Account becomes a Closed Account during the course of these cases, the Debtor shall be authorized to decrease the amount of the Adequate Assurance Deposit by withdrawing from Utility Deposit Account the amount deposited with respect to such Closed Account.

**BASIS FOR RELIEF**

19.      Section 366 of the Bankruptcy Code applies to entities providing electricity, gas, oil, water, trash removal, and/or telephone services, as well as any other entity that supplies services that cannot be readily obtained or replaced elsewhere, or which constitutes a monopoly with respect to the services it provides to a debtor.  *See In re Woodland Corp.*, 48 B.R. 623, 624–25 (Bankr. D.N.M. 1985) (court found that section 366 applied to electricity company that

7

provided electrical services to debtor); *In re Darby*, 470 F.3d 573, 574 (5th Cir. 2006) (clarifying those service providers that qualify as "utilities" under section 366); *In re NW Recreational Activities, Inc.*, 8 B.R. 7, 9 (Bankr. N.D. Ga. 1980) (discussing section 366's application to "utilities"); *In re Lucre, Inc.*, 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005) (court held that entities providing energy and telephone services were utilities under Bankruptcy Code section 366).

20.    The policy underlying section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility providers with adequate "assurance of payment" for post-petition utility service.  *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306; *see also In re Polly*, 392 B.R. 236, 240 (Bankr. N.D. Tex. 2008) (section 366(c) requires that debtor provide adequate assurance of payment); *In re Beach House Prop., LLC*, No. 08-11761-BKC-RAM, 2008 WL 961498, at *1 (Bank. S.D. Fla. Apr. 8, 2008) (same); *In re Viking Offshore (USA) Inc.*, No. 08-31219-H3-11, 2008 WL 782449, at *2-3 (Bankr. S.D. Tex. March 20, 2008) (same).

21.    Section 366(c)(1) of the Bankruptcy Code defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, cash deposits, letters of credit, prepayment for utility service) while excluding from the definition certain other forms of security (*e.g.*, administrative expense priority for a utility's claim).  In addition, section 366(c)(3)(B) of the Bankruptcy Code provides that a court may not consider certain facts (*e.g.*, a debtor's prepetition history of making timely payments to a utility) in making a determination of adequate assurance of payment.

22.    While section 366(c) of the Bankruptcy Code clarifies what does and does not constitute "assurance of payment" and what can be considered in determining whether such

assurance is adequate, Congress, in enacting that section, did not divest the Court of its power to determine what amount, if any, is necessary to provide adequate assurance of payment to a Utility Provider.   Indeed, section 366(c) of the Bankruptcy Code not only fails to establish a minimum amount of adequate "assurance of payment," but explicitly empowers the court to determine the appropriate level of adequate assurance required in each case.  *See* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the Court may order modification of the amount of an assurance of payment . . . .").

23.     Thus, for instance, there is nothing within section 366 of the Bankruptcy Code that prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility provider is nominal, or even zero.   Prior to the enactment of section 366(c) of the Bankruptcy Code, courts enjoyed precisely that discretion to make such rulings pursuant to section 366(b) of the Bankruptcy Code, and frequently did.  *See Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment.'").

24.     Moreover, Congress has not changed the requirement that the assurance of payment only be "adequate." Courts construing section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay.  *See*, *e.g.*, *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment.  The statute does not require an 'absolute

guarantee of payment.'") (citation omitted), *aff'd sub nom Virginia Elec. & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), *In re Adelphia Bus. Solutions, Inc.*, 280 BR. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *Steinebach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance . . . all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment"); *In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that section 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances").[4]   Additionally, Courts are not bound by state or local regulations that set adequate assurance of payment post-petition.  *In re Begley*, 41 B.R. 402, 405-06 (Bankr. D. Pa. 1984), *aff'd*, 760 F.2d 46 (3d Cir. 1987).  Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a debtor seeks to have the Court determine the appropriate amount of adequate assurances.

25.     The Debtor submits that, given the foregoing, entry of the Order is consistent with, and fully satisfies, the requirements of section 366 of the Bankruptcy Code.  Far from offering the Utility Providers nominal (or even no) additional assurance of payment, the Debtor is proposing to (a) deposit significant cash amounts for the benefit of the Utility Providers and (b) establish procedures pursuant to which the Utility Providers can seek greater or different

---

[4]     Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985).

security.   Such assurance of payment should significantly alleviate—if not eliminate—any concern of non-payment on the part of the Utility Providers.

26.     The relief sought herein is similar to the relief granted in other recent chapter 11 cases.   *See*, *e.g.*, *In re SemCrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. August 19, 2008) (approving adequate assurance in the form of a letter of credit or escrow account containing an amount equal to two weeks' deposit); *In re Landsource Cmtys. Dev. LLC*, Case No. 08-11111 (KJC) (Bankr. D. Del. June 16, 2008) (approving adequate assurance to requesting utilities in an amount equal to two weeks' deposit); *In re Steve & Barry's Manhattan, LLC*, Case No. 08-12579 (ALG) (Bankr. S.D.N.Y. July 31, 2008) (approving adequate assurance to requesting utilities in an amount equal to two weeks' deposit); *In re Reddy Ice Holdings, Inc.*, Case No. 12-32349 (SGJ) (Bankr. N.D. Tex. May 4, 2012) (approving adequate assurance in the form of deposit in a segregated account of roughly two weeks' utility costs); *In re Sears Methodist Retirement System, Inc.*, Case No. 14-32821 (SGJ) (Bankr. N.D. Tex. July 15, 2014).

## <u>REQUEST FOR WAIVER OF STAY</u>

27.     In addition, by this Motion, the Debtor seeks a waiver of any stay of the effectiveness of the order approving this Motion.   Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."   As set forth above, the Debtor requires the requested relief to continue ordinary business operations for the benefit of all parties in interest.   Accordingly, the Debtor submits that ample cause exists to justify a waiver of the fourteen (14)-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

11

## NOTICE

28.     Notice of this Motion shall be provided to (a) the Office of the United States Trustee for the District of Colorado, (b) the Debtors' thirty largest unsecured creditors, (c) counsel to the Debtors' secured lender, Wells Fargo Bank, N.A., (d) all parties who have, as of the date of this Motion, entered an appearance and requested service of papers in this case, and (e) the Utility Providers set forth in Exhibit A.  The Debtor submits that, in light of the nature of the relief requested, no other or further notice is necessary or required.

**WHEREFORE**, the Debtor respectfully requests that the Court enter the Order substantially in the form attached hereto as **Exhibit B** granting the relief requested herein and grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated this 7th day of April, 2015.

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

*s/ Michael J. Pankow*
Michael J. Pankow, #21212
Joshua M. Hantman, #42010
Rafael R. Garcia-Salgado, #47382
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
jhantman@bhfs.com
rgarcia@bhfs.com

*Proposed Attorneys for Debtor*

018059\0001\12080205.4