## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | Case No. 15-13485-MER |
| FRESH PRODUCE HOLDINGS, LLC, *et al.*[1] | Chapter 11 |
| Debtors. | Jointly Administered |

### AGREED ORDER AUTHORIZING INTERIM USE OF CASH COLLATERAL AND PROVIDING FOR ADEQUATE PROTECTION

THIS MATTER came before the Court on April 9, 2015 upon the Emergency Motion To Approve Agreed Order Authorizing Use of Cash Collaeral and Providing For Adequate Protection ("**Motion**") filed by the Debtor, Fresh Produce Holdings, LLC (the "**Debtor**"), dated April 6, 2015 for entry of Order Authorizing (I) Use of Cash Collateral, and (II) Providing Adequate Protection seeking interim and final authority and approval for:

I.      The Debtor to use cash collateral (as such term is defined in the Bankruptcy Code) in which Wells Fargo Bank, National Association ("**Secured Lender**") has an interest and the granting of adequate protection to Secured Lender with respect to such use of its cash collateral and all use and diminution in value of the Pre-Petition Collateral (as defined below); and

II.      The granting of certain super-priority claims to Secured Lender payable from proceeds of pre-petition and post-petition property of the Debtor's estate.

NOW THEREFORE, based upon the Motion, offers of proof and the pleadings and other submissions in this Case and, after due deliberation and sufficient cause appearing therefor, the Parties represent to the Court as follows (which are not findings by the Court):

### BACKGROUND

A.      The Debtor filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code ("**Bankruptcy Code**") with this Court on April 3, 2015 (the "**Petition Date**").

B.      The Debtor has continued in the management of its business and possession of its property as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. An

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Fresh Produce Holdings, LLC (2945); Fresh Produce Retail, LLC (5124); Fresh Produce Sportswear, LLC (1339); Fresh Produce of St. Armands, LLC (2806); FP Brogan-Sanibel Island LLC (2574); and Fresh Produce Coconut Point, LLC (5784). The location of the Debtors' service address is: 2865 Wilderness Place, Boulder, Colorado 80301.

official committee of unsecured creditors ("**Committee**") has not yet been appointed by the United States Trustee.

C.      As of the Petition Date, the Debtor was indebted to Secured Lender in the approximate amount of $3,833,234.40 exclusive of contingent liabilities, swap liabilities and fees and expenses owed pursuant to applicable loan documents (hereafter such indebtedness and all accrued but unpaid interest, fees and costs and all other obligations and contingent liabilities incurred or existing as of the Petition Date shall be referred to collectively as the "**Pre-Petition Secured Debt**").  The Pre-Petition Secured Debt was incurred pursuant to, and is evidenced by, various documents, agreements, amendments, modifications, supplements and instruments described on **Exhibit A** attached hereto and incorporated herein (together, the "**Loan Documents**").  The Loan Documents are voluminous and have not been attached hereto but are available upon request to the Debtor's counsel.

D.      The Debtor acknowledges that, pursuant to the Loan Documents, the Pre-Petition Secured Debt is secured by a valid and perfected first priority lien and security interest in substantially all of the Debtor's property and all proceeds (including, without limitation, insurance) thereof, including, without limitation, all of the Debtor's personal property in existence on the Petition Date and described on **Exhibit B** attached hereto and incorporated herein by reference (the "**Pre-Petition Collateral**").

E.      Subject only to the rights of third parties as provided in paragraph 19 below, the Debtor acknowledges and agrees that:  (a) the Loan Documents are valid and binding upon the Debtor in all respects and continue in full force and effect with respect to the Pre-Petition Secured Debt and the Pre-Petition Collateral; (b) the amount of the Pre-Petition Secured Debt is fully due and payable by the Debtor to Secured Lender as of the Petition Date; (c) Secured Lender's liens and security interests upon the Pre-Petition Collateral are valid, perfected and enforceable in all respects; (d) Secured Lender's pre-petition claims against the Debtor and its estate are hereby allowed and are valid and enforceable in the amount set forth above, together with all pre-petition interest, fees and expenses as provided for in the Loan Documents, and are not subject to avoidance or subordination under the Bankruptcy Code or otherwise; (e) the Debtor is unaware of any claims, defenses, setoffs, equitable claims (including without limitation claims of subordination or recharacterization), avoidance claims and counterclaims of any kind including, without limitation, those which would affect the amount, validity and enforceability of the Pre-Petition Secured Debt and Secured Lender's liens and security interests in the Pre-Petition Collateral in any way; and (f) as a result of the foregoing, on the Petition Date, Secured Lender held, and continues to hold, a first-priority perfected security interest in the Pre-Petition Collateral.

F.      The Debtor needs to use Secured Lender's cash collateral, as defined in Section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), in accordance with the budget ("**Budget**") attached hereto and incorporated herein as **Exhibit C**, in order to permit, among other things, the orderly continuation of the operation of its businesses, to make payroll, and to satisfy other working capital needs.  The ability of the Debtor to obtain sufficient working capital and liquidity through the use of Cash Collateral is necessary to the preservation and maintenance of the value of the Debtor's estate.

G.      The use of Cash Collateral has been negotiated in good faith (as that term is used in Section 364(e) of the Bankruptcy Code) and at arm's length between the Debtor and Secured Lender and Secured Lender shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

H.      Without the use of Cash Collateral, the Debtor will not have the funds necessary to pay post-petition payroll, payroll taxes, suppliers, overhead and other expenses.

I.      The proposed use of Cash Collateral is necessary and appropriate for the continued operation of the Debtor's businesses and management and preservation of its assets.

J.      To the best information, knowledge and belief of the Debtor, the use of Cash Collateral set forth in the Budget is sufficient to fully pay the obligations incurred by the Debtor on and after the Petition Date and for the time period set forth in the Budget.

K.      Secured Lender is willing to consent to the use of Cash Collateral described in the Motion and the Budget subject to the terms and conditions set forth herein.

L.      The terms regarding the Debtor's use of Cash Collateral are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and are supported by reasonably equivalent value and fair consideration.

M.      The Debtor has requested entry of this Order pursuant to Bankruptcy Rules 4001(b) and 4001(d).  Absent entry of this Order, the Debtor's estate will suffer immediate and irreparable harm.  The use of Cash Collateral in accordance with this Order and the DIP Loan Documents is therefore in the best interest of the Debtor's estate.

N.      This matter constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (D), (G), (K), (M) and (O).  The Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

O.      Sufficient and adequate notice of the Motion and the hearing with respect thereto appears to have been given pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014, and no timely objections were filed.

P.      Good, adequate and sufficient cause has been shown to justify the granting of the relief requested in the Motion.

## **ORDER**

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, effective as of the date set forth below, that:

1.      <u>Approval</u>.  The Motion is hereby granted and approved as to the Debtor's use of Cash Collateral on the terms and conditions set forth herein.

2.      <u>Authorization to Use Cash Collateral</u>.

(a)     Subject to the additional limitations set forth in Section 2(b) of this Order,, the Debtor is hereby authorized to use Cash Collateral for the purpose of preserving and maximizing the value of the Debtor's estate, up to the amounts set forth in the Budget, for the period from the Petition Date until April 30, 2015; provided, however, (i) the Debtor shall not exceed the weekly disbursement amounts specified in the Budget by more than 5% in the aggregate on a cumulative weekly basis and (ii) the Debtor shall collect no less than 85% of cash receipts specified in the Budget on a cumulative weekly basis. Unless Secured Lender consents in writing, the Debtor shall not pay any items that are not described in the Budget or that fall outside the categories described in the Budget.

(b)     The Debtor may not use Cash Collateral to the extent that, after accounting for cash on hand (excluding the Professional Fee Reserve (defined below)), the amount outstanding would exceed the Borrowing Base (as defined in the Credit and Security Agreement described on Exhibit 1); provided that Secured Lender shall not add any new reserves or increase reserves during the term of this Order.

3.     Additional Adequate Protection. As used herein the term "**Cash Collateral Use Amount**" includes all Cash Collateral used by the Debtor after the Petition Date. To provide Secured Lender with the adequate protection required by Sections 361(1) and (2) and 363(e) of the Bankruptcy Code:

(a)     Replacement Lien. To the extent of the Cash Collateral Use Amount, Secured Lender is hereby granted and provided with a security interest in and lien upon all pre-petition and post-petition inventory, chatter paper, accounts, furniture, fixtures, equipment and general intangibles and all proceeds thereof and all proceeds of the Pre-Petition Collateral (the "**Adequate Protection Collateral**"). Notwithstanding anything to the contrary herein, Adequate Protection Collateral shall not include any of the Debtor's avoidance actions arising under Sections 544, 545, 546, 547, 548, 549, 550 and 551 of the Bankruptcy Code (the "**Avoidance Actions**") or the proceeds therefrom.

(b)     Further Adequate Protection. To the extent that there is a diminution in the value of Secured Lender's Pre-Petition Collateral after the Petition Date that is not offset by the value of the Adequate Protection Collateral:

(i)     Super-Priority Expense Claim. Secured Lender is hereby granted an allowed super-priority administrative claim pursuant to Section 507(b) of the Bankruptcy Code; provided, however, Secured Lender's super-priority administrative claim shall be subordinate to: (i) all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (ii) up to $7,500 for fees, costs and expenses of any chapter 11 trustee; provided, further, however, that the super-priority administrative claim shall not be payable from Avoidance Actions or the proceeds therefrom.

(c)     Section 552. Secured Lender's liens upon and security interests in the Pre-Petition Collateral shall continue in the proceeds and profits of the Pre-Petition Collateral, as provided in Section 552(b) of the Bankruptcy Code, without exception as further described in the Loan Documents, including, without limitation, all post-petition inventory and accounts

4

receivable.

4.     Adequate Protection Payments.  As part of the adequate protection being provided to Secured Lender for the Debtor's use of Cash Collateral, the Debtor shall timely make the scheduled monthly interest payments pursuant to the Loan Documents to Secured Lender on the Pre-Petition Secured Debt at the non-default interest rate as required by the Loan Documents.  In addition,  if as of April 30, 2015, the aggregate of the Net Cash Flow (as set out in line 48 of the Budget) exceeds the Budget ("Surplus Net Cash Flow Amount"), and the Debtor determines in good faith that increased inventory purchases consistent with the Budget are not necessary to maximize returns to the Debtor's creditors, then on May 4, 2015, Debtor shall make an additional adequate protection payment to Secured Lender equal to the Surplus Net Cash Flow Amount.Such payments, if any, shall be applied to reduce the Pre-Petition Secured Debt.  Further, nothing herein shall prevent Secured Lender from seeking payment of additional interest, fees or charges as set forth in the Loan Documents and as may be allowable under Section 506(b) of the Bankruptcy Code.

5.     Unfinished Goods/Raw Material.  As adequate protection for Secured Creditor's consent to the Debtor's use of Cash Collateral and the Debtor's use and consumption of a portion of the Pre-Petition Collateral consisting of unfinished goods and raw materials, Secured Creditor shall be granted first priority security interests in all new finished goods and new inventory created on or after the Petition Date.

6.     Additional Protection For Secured Lender.  In addition, Secured Lender shall not be subject to the equitable doctrine of marshaling or any similar doctrine with respect to the Pre-Petition Collateral or otherwise.

7.     Termination.  Secured Lender's consenting to use of Cash Collateral and the Debtor's authority to use Cash Collateral under this Order shall terminate upon the earlier of (i) the occurrence of any Event of Default (as hereinafter defined) or (ii) April 30, 2015 (the earlier of which shall be the "**Termination Date**").

## II.  EVENTS OF DEFAULT AND REMEDIES

8.     Events of Default.  The Debtor shall be deemed in default under this Order upon the occurrence of any of the following (each an "**Event of Default**"):  (a) the Debtor's failure to perform any of its obligations pursuant to this Order including, without limitation, paying Secured Lender the scheduled monthly interest payments and other adequate protection payments as provided in paragraph 4 hereof; (b) the Debtor's failure to comply with the Budget, subject to the variance, as described and set forth in paragraph 2 hereof; (c) the appointment of a trustee pursuant to either Sections 1104(a)(1) or 1104(a)(2) of the Bankruptcy Code; (d) the appointment of an examiner with expanded powers; (e) the conversion or dismissal of this case; (f) the entry of an order providing for relief from the automatic stay on any item comprising the Pre-Petition Collateral with a value in excess of $25,000; (g) failure of the Debtor to file a motion by April 8, 2015 seeking authority to sell or conduct a going out of business sale of substantially all of its assets; (h) failure to obtain approval of this Order as a final order on or before April 30, 2015; (i) failure to obtain entry of an order approving sale and bidding procedures by April 30, 2015, (j) failure to obtain the entry of an order by May 14, 2015  approving a sale or the conducting of a

going out of business sale of substantially of all of the Debtor's assets; (k) failure to close either an asset purchase agreement or an agency agreement to conduct a going out of business sale of the Debtor's assets by May 15, 2015 and to deliver the proceeds thereof (up to the remaining amount of Pre-Petition Secured Debt then due and owing) to Secured Lender by May 19, 2015; (l) except as specifically consented to by Secured Lender in writing, any failure by the Debtor to immediately deliver to Secured Lender any and all net proceeds derived from the sale outside the ordinary course of business of any property constituting the Pre-Petition Collateral (up to the remaining amount of Pre-Petition Secured Debt then due and owing); (m) the entry of any order amending, modifying, violating, contradicting, reversing, revoking, staying, rescinding or vacating this Order without the express prior written consent of Secured Lender (which may be withheld in Secured Lender's sole discretion and shall not be implied from any other action, inaction or acquiescence by Secured Lender); (n) conversion of the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code; or (o) the creation of a lien or security interest in favor of any person or entity other than Secured Lender on the Pre-Petition Collateral that is equal or greater in priority to the liens granted to Secured Lender.

9.      <u>Default Remedies</u>.  Upon the occurrence of any Event of Default (unless waived by Secured Lender in writing in its sole discretion) and the giving of written notice thereof by overnight delivery service or email upon the Debtor, the Debtor's counsel, the United States Trustee and, if a Committee is appointed,  the chairperson and counsel of record for Committee (but without further notice, hearing or approval of the Court):  (a) the Debtor's right to continue using Cash Collateral shall immediately cease; and (b) the Debtor shall segregate and account for any cash in the Debtor's possession, custody or control and hold such cash for the benefit of Secured Lender, subject to further order of this Court.  In such an event, the Debtor may seek an order of the Bankruptcy Court authorizing use of cash collateral on an expedited basis; the Secured Lender reserves rights in such an event.  In addition, Secured Lender shall be entitled to request an expedited hearing regarding relief from the automatic stay and the Debtor and Committee hereby consent to such a hearing within five (5) calendar days or such next time that the Court is available, with respect to vacating of the automatic stay upon the giving of notice of an Event of Default or if Secured Lender, reasonably and in good faith, believes that a material adverse change has occurred in business operations or collateral.  The Debtor acknowledges and agrees that Secured Lender would not have agreed to permit the Debtor to use and consume Cash Collateral as provided in this Order but for the terms and provisions of this paragraph of this Order.  Nothing herein shall preclude the Debtor or Committee from contesting the existence of an Event of Default.

### III.  GENERAL PROVISIONS

10.      <u>Automatic Perfection</u>.  This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of Secured Lender's liens and security interests upon the Adequate Protection Collateral and Secured Lender shall not be obligated to obtain the execution of, file or record any documents or take any other actions to evidence and effectuate the financing and other arrangements described in this Order.  Furthermore, the Secured Lender is not required, to create, attach, perfect, or continue Secured Lender's liens and security interests in the Pre-Petition Collateral or Adequate Protection Collateral and Secured Lender is not required to provide any third parties with notice thereof as otherwise would be required under applicable law. Secured Lender, in its discretion, shall be entitled to file a certified copy of this Order in any filing or recording office in any jurisdiction in which the Debtor conducts its businesses or possesses any

personal property and, in such event, the filing or recording officer is authorized and directed to file or record such certified copy of this Order.

11.     Accounting by the Debtor.  Within three (3) business days after the entry of this Order, the Debtor shall account to Secured Lender for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Pre-Petition Collateral in the Debtor's possession or control (collectively, "**Cash Proceeds**").  All Cash Proceeds in the possession of the Debtor or in any accounts of the Debtor in financial or other institutions, including, without limitation, any lock box, brokerage, escrow, pledge or depository accounts, as of the Petition Date, shall be deemed proceeds of the Pre-Petition Collateral.

12.     Insurance.  The Debtor is authorized and directed to establish and maintain insurance coverage on the Pre-Petition Collateral for the full replacement value therefor and to cause Secured Lender to be named as lender loss payee for the insurance policies.  In addition, the Debtor shall maintain casualty and general liability insurance and shall name Secured Lender as an additional insured on all insurance policies in accordance with the Loan Documents.  The insurance policies and related endorsements shall be in form and substance reasonably acceptable to Secured Lender.

13.     Trust Fund Taxes.  The Debtor is hereby authorized to segregate all trust fund taxes from the Debtor's operating accounts and to pay all post-petition federal and state payroll, withholding, sales, use, personal property, real property, and other taxes and assessments of any kind when due and owing under applicable law in accordance with the Budget.  Secured Lender shall not be responsible for the payment of such taxes and assessments under any conditions.

14.     Financial Reporting.  Unless there is a written waiver by Secured Lender in each instance, the Debtor is authorized and directed to provide to Secured Lender the information, reports, schedules, insurance policies and endorsements, and other documents as well as the access, audit, inspection and other rights which the Debtor is required to provide to Secured Lender under the Loan Documents, including, without limitation, daily cash reports which detail daily collections.  In addition, on a weekly basis, the Debtor shall provide Secured Lender with: (a) a weekly accounts receivable aging; (b) a weekly Budget comparison showing each line item in the Budget, the amount budgeted, the actual amount and the variance, if any; and (c) a weekly accounts payable aging.  In addition, on Wednesday of each week, the Debtor shall provide Secured Lender with borrowing base reports in accordance with the Loan Documents.  The Debtor shall also provide Secured Lender with reasonable access to its books, records and physical premises, and shall timely supply Secured Lender with copies of its Schedules, Statements of Financial Affairs, and Monthly Operating Reports contemporaneously with the filing of same.

15.     Reliance Upon Order.  Secured Lender is  consenting to the Debtor's use of Cash Collateral in reliance on this Order.  The replacement liens and security interests granted to Secured Lender pursuant to Paragraph 3(a) hereunder and the rights of Secured Lender with respect to the Adequate Protection Collateral shall not in any way be altered, impaired, modified, or otherwise adversely affected.

16.     Professional Fee Reserve.  The Debtor shall, on Tuesday each week for the Budget period, make a deposit of up to[$60,000] for a total not to exceed [$240,000]  into a separate bank

account in the Debtor's name for the benefit of professionals retained by the Debtor or any statutory committee pursuant to 11 U.S.C. § 327 and 1103 (the "Professional Fee Reserve"). Payment of interim and final fees and expenses, from time to time, as awarded by the Court or payable pursuant to any interim compensation procederes approved by this Court, shall first be made from funds in the Professional Fee Reserve.  Any excess funds in the Professional Fee Reserve after payment of all final awards of fees and expenses shall be made available to the Debtor's estate.  Except as to any excess funds returned to the Debtor for general purposes pursuant to the preceding sentence, funds in the Professional Fee Reserve shall not be subject to the liens or superpriority claims of the Secured Lender.  Further, none of the funds in the Professional Fee Reserve may be used to fund, pay or reimburse any professional fee or expense incurred in connection with disputing or challenging the scope, extent, validity or priority of Secured Lenders claims or liens.

17.    <u>Fees and Expenses of Lender</u>.  Without further order of Court (it being understood that such amounts have not been provided for in the Budget and the payment of which would not cause the Debtor to be in default hereunder), the Debtor is authorized to immediately pay or reimburse Secured Lender for all reasonable attorneys' fees, costs, expenses and charges incurred by Secured Lender in connection with:  (a) the negotiation, preparation and implementation of this Order; and (b) the monitoring, implementation, preservation, enforcement or protection of Secured Lender's rights under the Loan Documents or this Order.  Any dispute regarding the reasonableness of such fees, costs, expenses and charges may be brought before the Court.

18.    <u>Survivability</u>.  The provisions of this Order shall inure to the benefit of the Debtor and Secured Lender and shall be binding upon the Debtor and its estate.  The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order which may be entered converting this case to a chapter 7 case or any order which may be entered confirming or consummating any plan of reorganization of the Debtor.  The terms and provisions of this Order with respect to replacement liens granted to Secured Lender in the Adquate Protection Collateral pursuant to paragraph 3(a) shall be binding upon and enforceable against any subsequently appointed chapter 11 or chapter 7 trustee.

19.    <u>Effect of Stipulations on Third Parties</u>.  Subject to modification in whole or in part by further order of the Court, the stipulations, admissions, agreements and assertions contained in this Order, including, without limitation, the assertions contained in paragraph D and E  of this Order, shall be binding upon the Debtor and all other parties in interest, including, without limitation, any creditors committee which may be appointed in this case, unless (a) a party in interest, including, without limitation, a creditors committee, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than May 19, 2015 (i) for claims challenging the extent, validity, enforceability, perfection or priority of the Pre-Petition Secured Debt or Secured Lender's liens on the Pre-Petition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims, subordination or any other claims, counterclaims or causes of action, objections, contests or defenses against Secured Lender or any of Secured Lender or its affiliates, representatives, attorneys or advisors in connection with matters related to the Loan Documents, the Pre-Petition Secured Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter.  Nothing contained herein is intended to assign any claim of the

8

Debtor to any third party or to bestow any standing with respect thereto. If no such adversary proceeding or contested matter is timely filed as required by this paragraph, then: (x) the Pre-Petition Secured Debt and all other pre-petition and post-petition obligations of the Debtor pursuant to the Loan Documents shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, pursuant to the Bankruptcy Code or otherwise for all purposes in this chapter 11 case and any subsequent chapter 7 case, (y) Secured Lender's liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to subordination, recharacterization, setoff, defense or avoidance, pursuant to the Bankruptcy Code or otherwise for all purposes in this chapter 11 case and any subsequent chapter 7 case and (z) the Pre-Petition Secured Debt and all other pre-petition and post-petition obligations of the Debtor pursuant to the Loan Documents, and Secured Lender's liens on the Pre-Petition Collateral, shall not be subject to any other or further challenge by any party in interest, including, without limitation, the Debtor, seeking to exercise the rights of the Debtor's estate and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for the Debtor). If any such adversary proceeding or contested matter is timely filed, the representations, acknowledgments and agreements contained in paragraph D and E of this Order shall nonetheless remain binding and preclusive (as provided in this paragraph) on Committee and on any other person or entity, except to the extent that such representations, acknowledgments or agreements are expressly challenged and thereby modified as a result of a final order not subject to further appeal in such adversary proceeding or contested matter.

20.    _Loan Documents_. The Debtor will continue to be bound by the terms, obligations and conditions set forth in the Loan Documents except to the extent provided otherwise in this Order.

21.    _Final Hearing; Interim Authorization_. A final hearing on the motion shall be heard before this Court on April 29, 2015 at 1:30 p.m. in Courtroom C, United States Bankruptcy Court, District of Colorado, 721 19th Street, Denver, CO 80202. The Debtor's authorization as set forth herein to use Secured Lender's Cash Collateral in accordance with the Budget shall continue only through the date set forth above for the final hearing on the motion.

22.    The Debtor shall promptly mail copies of this Order and notice of the final hearing to Secured Lender, its counsel, the U.S. Trustee, any other secured creditor herein and the 20 Largest Unsecured Creditors herein and which mailing must be accomplished no later than April 13, 2015.

23.    _Order Controls_. To the extent the terms and conditions of the Loan Documents are in conflict with the terms and conditions of this Order, the terms and conditions of this Order shall control.

24.    _Notice_. Any notices required or allowed under this Order shall be given by overnight delivery or email as follows:

If to the Debtor:

Fresh Produce Holdings, LLC

2865 Wilderness Place
Boulder, CO  80301
Email:  surban@fpcolor.com and jstone@fpcolor.com
Attention:  Steve Urban and Jo Stone

with a copy to:

Michael J. Pankow, #21212
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO  80202
Email:  mpankow@bhfs.com

If to Secured Lender:

Amber Vestal
Wells Fargo Bank, National Association
100 W. Washington
MAC:  S4101-158
Phoenix, AZ  85003
Email:  Amber.vestal@wellsfargo.com

with a copy to:

James T. Markus
Markus Williams Young & Zimmermann LLC
1700 Lincoln Street, Suite 4550
Denver, CO  80203
Email:  jmarkus@markuswilliams.com

Dated:  April 10, 2015 *nunc pro tunc* April 9, 2015.

BY THE COURT:

_____
United States Bankruptcy Judge

**AGREED TO FORM AND SUBSTANCE**:

**FRESH PRODUCE HOLDINGS, LLC**

By:  *s/Michael J. Pankow*
Michael J. Pankow, #21212
Brownstein Hyatt Farber Schreck, LLP
410 17th Street, Suite 2200
Denver, CO  80202
Telephone:  (303) 223-1106
mpankow@bhfs.com

**WELLS FARGO BANK, N.A.**

By:  *s/James T. Markus*
James T. Markus
Markus Williams Young & Zimmermann LLC
1700 Lincoln Street, Suite 4550
Denver, CO  80203
Telephone:  (303) 830-0800
Facsimile:  (303) 830-0809

## EXHIBIT A – List of Loan Documents

1.      Credit and Security Agreement dated September 26, 2014, as amended by that certain First Amendment to Credit and Security Agreement and Forbearance Agreement dated March 13, 2015 (the "**Credit Agreement**")

2.      $10,000,000 Revolving Note dated September 26, 2014

3.      UCC-1 Financing Statement (all assets) filed against the Debtor with the Delaware Secretary of State, File No. 2014 3400728 filed August 22, 2014

4.      Patent and Trademark Security Agreement dated September 26, 2014 recorded with United States Patent and Trademark Office on October 6, 2014, at Reel 5375, Frame 0557

5.      Copyright Security Agreement dated September 26, 2014

6.      Continuing Guaranty of Fresh Produce Retail, LLC dated September 26, 2014

7.      Continuing Guaranty of Fresh Produce Sportswear LLC dated September 26, 2014

8.      Continuing Guaranty of FP Brogan-Sanibel Island LLC dated September 26, 2014

9.      Continuing Guaranty of Fresh Produce of St. Armands, LLC dated September 26, 2014

10.     Continuing Guaranty of Fresh Produce of Coconut Point, LLC dated September 26, 2014

11.     Continuing Guaranty of Thomas C. Vernon and Mary Ellen Vernon dated September 26, 2014

12.     Amended and Restated Continuing Guaranty of Thomas C. Vernon and Mary Ellen Vernon dated March 13, 2015

13.     UCC-1 Financing Statement (all assets) filed against Fresh Produce Retail, LLC with the Colorado Secretary of State, File No. 20142079526, filed August 22, 2014

14.     UCC-1 Financing Statement (all assets) filed against Fresh Produce Sportswear LLC with the Colorado Secretary of State, File No. 20142079528, filed August 22, 2014

15.     UCC-1 Financing Statement (all assets) filed against FP Brogan-Sanibel Island LLC with the Colorado Secretary of State, File No. 20142079532, filed August 22, 2014

16.     UCC-1 Financing Statement (all assets) filed against Fresh Produce of St. Armands, LLC with the Florida Secretary of State, File No. 201402066293, filed August 22, 2014

17.     UCC-1 Financing Statement (all assets) filed against Fresh Produce Coconut Point, LLC with the Florida Secretary of State, File No. 201402066307, filed August 22, 2014

**EXHIBIT B – Pre-Petition Collateral**

Pre-Petition Collateral includes all of the Debtor's now owned or hereafter acquired:[2]

(a)       Accounts;

(b)       Books;

(c)       Chattel Paper;

(d)       Deposit Accounts;

(e)       Goods, including, without limitation, Equipment and Fixtures;

(f)       General Intangibles, including, without limitation, Intellectual Property and Intellectual Property Licenses;

(g)       Inventory;

(h)       Investment Related Property;

(i)       Negotiable Collateral;

(j)       Supporting Obligations;

(k)       Commercial Tort Claims;

(l)       money, Cash Equivalents, or other assets of such Loan Party that now or hereafter come into the possession, custody, or control of Lender (or its agent or designee);

(m)       the Real Property Collateral; and

all of the proceeds (as such term is defined in the Code) and products, whether tangible or intangible, of any of the foregoing, including, without limitation, proceeds of insurance or Commercial Tort Claims covering or relating to any or all of the foregoing, and any and all Accounts, Books, Chattel Paper, Deposit Accounts, Equipment, Fixtures, General Intangibles (including, without limitation, Intellectual Property and Intellectual Property Licenses), Inventory, Investment Related Property, Negotiable Collateral, Supporting Obligations, money, or other tangible or intangible property resulting from the sale, lease, license, exchange, collection, or other disposition of any of the foregoing, the proceeds of any award in condemnation with respect to any of the foregoing, any rebates or refunds, whether for taxes or otherwise, and all proceeds of any such proceeds, or any portion thereof or interest therein, and the proceeds thereof, and all proceeds of any loss of, damage to, or destruction of the above, whether insured or not insured, and, to the extent not otherwise included, any indemnity, warranty, or guaranty payable by reason of loss or damage to, or otherwise with respect to any of the foregoing (collectively, the "**Proceeds**").

---

[2] These terms are more fully defined in the Credit Agreement.

Without limiting the generality of the foregoing, the term "Proceeds" includes whatever is receivable or received when Investment Related Property or proceeds are sold, exchanged, collected, or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes proceeds of any indemnity or guaranty payable to such Loan Party or Lender from time to time with respect to any of the Investment Related Property.

**EXHIBIT C - Budget**

[to be attached]