UNITED STATES BANKRUPTCY COURT
DISTRICT OF COLORADO

| | |
|---|---|
| In re | |
| FRESH PRODUCE HOLDINGS, LLC, et al.[1] | Case No. 15-13485-MER |
| Debtors. | Chapter 11 |

**THE DEBTORS' JOINT LIQUIDATING CHAPTER 11 PLAN OF REORGANIZATION**

Dated: July 31, 2015

Michael J. Pankow, Esq.
Joshua M. Hantman, Esq.
Rafael R. Garcia-Salgado, Esq.
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 17th Street, Suite 2200
Denver, Colorado 80202
Telephone: (303) 223-1100
Facsimile: (303) 223-1111

**Attorneys for the Debtors**

---

[1] The Debtors in the chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: Fresh Produce Holdings, LLC (2945); Fresh Produce Retail, LLC (5124); Fresh Produce Sportswear, LLC (1339); Fresh Produce of St. Armands, LLC (2806); FP Brogan-Sanibel Island LLC (2574); and Fresh Produce Coconut Point, LLC (5784). The location of the Debtors' service address is: 2865 Wilderness Place, Boulder, Colorado 80301.

018059\0006\12282487.5

# TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| ARTICLE I | INTRODUCTION | 1 |
| ARTICLE II | DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME | 1 |
| 2.01 | Definitions | 1 |
| 2.02 | Rules of Interpretation | 5 |
| 2.03 | Computation of Time | 5 |
| ARTICLE III | TREATMENT OF UNCLASSIFIED CLAIMS | 5 |
| 3.01 | Administrative Expense Claims | 5 |
| 3.02 | Priority Tax Claims | 5 |
| 3.03 | Professional Fees | 5 |
| 3.04 | Statutory Fees | 6 |
| ARTICLE IV | DESIGNATION OF CLASSES | 6 |
| 4.01 | Classification | 6 |
| ARTICLE V | TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS | 6 |
| 5.01 | Class 1: Priority Non-Tax Claims | 6 |
| 5.02 | Class 2: Secured Claims | 6 |
| 5.03 | Class 3: General Unsecured Claims | 7 |
| 5.04 | Class 4: Equity Interests | 7 |
| 5.05 | Cramdown | 7 |
| ARTICLE VI | PROVISIONS REGARDING RESOLUTION OF CLAIMS AND DISTRIBUTIONS UNDER THE PLAN | 8 |
| 6.01 | Method of Distributions under the Plan | 8 |
| 6.02 | Objections to Claims | 8 |
| 6.03 | Reserves for Disputed Claims | 8 |
| 6.04 | Claims Estimation | 9 |
| 6.05 | Claims Allowance | 9 |
| ARTICLE VII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 9 |
| 7.01 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 9 |
| 7.02 | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 9 |

# TABLE OF CONTENTS
(continued)

| | | Page |
|---|---|---|
| ARTICLE VIII | OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN | 10 |
| 8.01 | Term of Bankruptcy Injunction or Stays | 10 |
| 8.02 | Plan Administrator | 10 |
| 8.03 | Vesting of Assets | 12 |
| 8.04 | Creditors' Committee | 12 |
| 8.05 | Post Effective Date Committee | 12 |
| 8.06 | Corporate Existence of the Debtors | 12 |
| 8.07 | Substantive Consolidation of Debtors' Estates | 12 |
| 8.08 | No Discharge | 13 |
| 8.09 | Preservation of Setoff Rights | 13 |
| ARTICLE IX | EFFECTIVENESS OF THE PLAN | 13 |
| 9.01 | Conditions Precedent to Effectiveness | 13 |
| ARTICLE X | RETENTION OF JURISDICTION | 13 |
| 10.01 | Bankruptcy Court Jurisdiction | 13 |
| ARTICLE XI | MISCELLANEOUS PROVISIONS | 14 |
| 11.01 | Effectuating Documents and Further Transactions | 14 |
| 11.02 | Aid in Implementation of Plan | 14 |
| 11.03 | Exculpation | 14 |
| 11.04 | Post-Effective Date Fees and Expenses | 15 |
| 11.05 | Post-Effective Date Statutory Fees | 15 |
| 11.06 | Amendment or Modification of the Plan | 15 |
| 11.07 | Compromise and Settlement of Claims and Controversies | 15 |
| 11.08 | Release of Liens in Cash | 15 |
| 11.09 | Severability | 15 |
| 11.10 | Revocation or Withdrawal of the Plan | 16 |
| 11.11 | Binding Effect | 16 |
| 11.12 | Notices | 16 |
| 11.13 | Governing Law | 16 |
| 11.14 | Allocation of Plan Distributions Between Principal and Interest | 16 |

# DEBTORS' JOINT LIQUIDATING PLAN OF REORGANIZATION

## ARTICLE I
## INTRODUCTION

Pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), Fresh Produce Holdings, LLC ("FPH"), Fresh Produce Retail, LLC, Fresh Produce Sportswear, LLC, Fresh Produce of St. Armands, LLC, FP Brogan-Sanibel Island LLC, and Fresh Produce Coconut Point, LLC (the "Subsidiary Debtors," and collectively with FPH, the "Debtors") propose the following Plan of Reorganization (the "Plan").

The Plan is fairly simple. The Debtors have liquidated virtually all of their assets through the sale to Blue Stripe, LLC and no longer maintain operations. A Plan Administrator will be appointed to, subject to the oversight of the Post Effective Date Committee, review, analyze and object to claims, make Distributions to Creditors, and wind-down the Estates.

The Plan also provides for substantive consolidation of the Debtors' Estates. The manner in which the Debtors conducted business prepetition was such that FPH owned all assets and paid all of the Debtors' obligations. The Subsidiary Debtors did not maintain separate financial statements or books and records. Accordingly, separate assets and liabilities of the Subsidiary Debtors, if any, cannot be ascertained. The Subsidiary Debtors were parties to store leases, but FPH made the lease payments. Accordingly, all Creditors dealt with the Debtors as if they were one legal entity. Thus, substantive consolidation is necessary to administer and wind-down the Estates.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME

2.01 **Definitions**. As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

"**Administrative Expense Claim**" means any right to payment constituting a cost or expense of the Chapter 11 Cases under §§ 503(b), 507(a)(2), or 1114(e)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estates, any actual and necessary costs and expenses of operating the business of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business or liquidation of their assets, any Professional fee claim, and any fees or charges assessed against the Estates under § 1930 of Title 28 of the United States Code.

"**Administrative Expense Claim Bar Date**" shall have the meaning set forth in § 3.01 of this Plan.

"**Affiliate**" has the meaning set forth in § 101(2) of the Bankruptcy Code.

"**Allowed**" means, with respect to any Claim, the Claim or portion thereof that is not a Disputed Claim or Disallowed Claim: (a) for which a Proof of Claim was timely filed with the Bankruptcy Court, and as to which no Objection is interposed; (b) for which no Proof of Claim thereof was filed, to the extent that such Claim has been listed by the Debtors in one of their

018059\0006\12282487.5

1

Schedules as liquidated in amount and not disputed or contingent as to liability, and as to which no Objection is interposed; (c) which arises from the recovery of property under §§ 550 or 553 of the Bankruptcy Code and is allowed in accordance with § 502(h) of the Bankruptcy Code; (d) which is allowed under the Plan; or (e) which is allowed by a Final Order.

"**Avoidance Claims**" means any and all rights, claims, causes of action or rights to avoid any transfer or incurrence of debt that may be asserted or recovered by the Debtors in their capacity as debtor-in-possession pursuant to Chapter 5 of the Bankruptcy Code.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Colorado.

"**Blue Stripe Acquired Causes of Action**" means the Causes of Action acquired by Blue Stripe, LLC pursuant to Sections 1.1(j) and (k) of that Asset Purchase Agreement between the Debtors and Blue Stripe, LLC, dated May 11, 2015, approved by the Court on May 12, 2015 [Dkt. No. 207 in Case No. 15-13485-MER].

"**Business Day**" means any day other than a Saturday, Sunday or any legal holiday under federal law or the State of Colorado.

"**Cash**" means legal tender of the United States of America and equivalents thereof.

"**Causes of Action**" means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise.

"**Chapter 11 Cases**" or "**Cases**" means the Debtors' cases under Chapter 11 of the Bankruptcy Code, jointly administered under Case No. 15-13485-MER on the docket of the Bankruptcy Court.

"**Claim**" has the meaning set forth in § 101(5) of the Bankruptcy Code.

"**Collateral**" means any property or interest in property of the Debtors' Estates subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

"**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to § 1129 of the Bankruptcy Code.

"**Creditor**" has the meaning ascribed to such term in § 101(10) of the Bankruptcy Code.

"**Creditors' Committee**" means the Official Unsecured Creditors' Committee appointed by the United States Trustee in these Chapter 11 Cases pursuant to § 1102 of the Bankruptcy Code, as it may be constituted from time to time.

"**Debtors**" shall have the meaning set forth in Article I of this Plan.

"**Disallowed**" means, when referring to a Claim, a Claim or any portion thereof, that (a) has been disallowed or expunged, in whole or in part, by a Final Order; (b) has been withdrawn by agreement between the Debtors or the Plan Administrator and the Holder thereof, in whole or in part; (c) has been withdrawn, in whole or in part, by the Holder thereof; (d) is listed in the Schedules as zero or as disputed, contingent or unliquidated and in respect of which a Proof of Claim has not been timely filed or deemed timely filed pursuant to the Plan, the Bankruptcy Code or any Final Order of the Bankruptcy Court; (e) has been reclassified, expunged, subordinated or estimated to the extent that such reclassification, expungement, subordination or estimation results in a reduction in the filed amount of any Proof of Claim; or (f) is evidenced by a Proof of Claim which has been filed, or which has been deemed to be filed under applicable law or order of the Bankruptcy Court or which is required to be filed by order of the Bankruptcy Court, but as to which such Proof of Claim was not timely or properly filed.  In each case a Disallowed Claim is disallowed only to the extent of disallowance, withdrawal, reclassification, expungement, subordination or estimation.

"**Disputed Claim**" means any Claim as to which an Objection is pending, filed or contemplated by the Plan Administrator.

"**Distribution**" means any payment of Cash called for under the Plan.

"**Effective Date**" means the first day after the conditions to effectiveness of the Plan provided in Section 9.01 hereof have been satisfied.

"**Estates**" means the estates in the Chapter 11 Cases.

"**Equity Interests**" means any ownership interests in and with respect to the Debtors.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceeding for reargument or rehearing will then be pending or as to which any right to appeal, petition for certiorari, reargument, or rehearing will have been waived in writing, in form and substance, satisfactory to the Debtors or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court will have been determined by the highest court to which such order was appealed, or certiorari reargument or rehearing will have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing will have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Federal Rules of Bankruptcy Procedure, may be filed with respect to such order will not cause such order not to be a Final Order.

"**General Unsecured Claim**" means any Claim other than a Priority Tax Claim, Priority Non-Tax Claim, a Secured Claim, an Equity Interest or an Administrative Expense Claim.

"**Holder**" means the holder of any Claim or Equity Interest.

"**Impaired**" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or class thereof that is impaired within the meaning of Bankruptcy Code § 1124.

"**Lien**" has the meaning set forth in section 101 of the Bankruptcy Code.

"**Objection**" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to disallow, determine, liquidate, classify, reclassify, establish the priority of, expunge, subordinate, or estimate any Claim (including the resolution of any request for payment of any Administrative Expense Claim), or Equity Interest, other than a Claim or an Equity Interest that is Allowed.

"**Plan**" means this Chapter 11 plan, either in its present form or as the same may be altered, amended or modified from time to time.

"**Plan Administrator**" means Ronald J. Freidman, a partner at Silverman Acampora LLP.

"**Post Effective Date Committee**" has the meaning ascribed in Section 8.05 of this Plan.

"**Post Effective Date Fees and Expenses**" means the fees and expenses of the Plan Administrator and Professionals retained by the Plan Administrator and the Post Effective Date Committee.

"**Priority Non-Tax Claim**" means any Claim entitled to priority under § 507(a)(1), (4), (5), (6), or (7) of the Bankruptcy Code.

"**Priority Tax Claim**" means any Claim of a governmental unit of the kind entitled to priority in payment as specified in §§ 502(i) and 507(a)(8) of the Bankruptcy Code.

"**Professionals**" means the professionals retained by the Debtors, the Creditors' Committee or the Plan Administrator under Bankruptcy Code §§ 327 or 1103 and to be compensated pursuant to Bankruptcy Code §§ 327, 328, 330, 331, or 503(b)(2), (4) or (5).

"**Professional Fees**" shall have the meaning set forth in § 3.03 of this Plan.

"**Proof of Claim**" means a proof of claim filed in connection with the Chapter 11 Cases.

"**Schedules**" mean the Schedules of Assets and Liabilities, the List of Holders of Interests, and the Statement of Financial Affairs filed by the Debtors, as may be amended.

"**Secured Claim**" means any Claim, to the extent reflected in the Schedules or a Proof of Claim as being secured and properly perfected, which is secured by a timely perfected lien, as defined by § 101(37) of the Bankruptcy Code, on collateral, to the extent of the value of the Estate's interest in such collateral, as determined as of the relevant determination date.

"**Tax Claim**" means any claim entitled to priority under § 507(a)(8) of the Bankruptcy Code.

"**Unimpaired**" means, when used in reference to a Claim or Equity Interest or a class thereof, a Claim or Equity Interest or a class thereof that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

"**Vernon Claims**" means any and all Causes of Action brought or that could be brought against Thom Vernon and/or Mary Ellen Vernon and/or their affiliates, subsidiaries, family trusts, related parties or other related entities that transacted business with the Debtors on or before May 15, 2015.

2.02  **Rules of Interpretation**. Wherever from the context it appears appropriate, each term stated in either the singular or the plural will include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender will include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in § 102 of the Bankruptcy Code will apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, will have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and will not limit or otherwise affect the provisions of the Plan.

2.03  **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Rule 9006(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") shall apply.

## ARTICLE III
## TREATMENT OF UNCLASSIFIED CLAIMS

3.01  **Administrative Expense Claims**. The deadline for filing an Administrative Expense Claim (other than post-petition operating expenses or professional fees) shall be 28 days after the Effective Date (the "**Administrative Expense Claim Bar Date**"). Except to the extent any entity entitled to payment of an Allowed Administrative Expense Claim has received payment on account of such Claim prior to the Effective Date or agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to such Allowed Claim by the later of either (i) the Effective Date or as soon thereafter as is reasonably practicable, or (ii) the date that 14 days after the Administrative Expense Claim is Allowed.

3.02  **Priority Tax Claims**. Except to the extent any entity entitled to payment of any Allowed Priority Tax Claim has received payment on account of such Claim prior to the Effective Date, each Holder of an Allowed Priority Tax Claim shall be paid in full on the Effective Date, or as soon thereafter as is reasonably practicable, unless such Holder of an Allowed Priority Tax Claim agrees to different treatment.

3.03  **Professional Fees**. All Professionals seeking payment of professional fees or reimbursement of expenses incurred through and including the Effective Date under § 503(b)(2), (3), (4) or (5) of the Bankruptcy Code ("**Professional Fees**") shall file their respective final

applications on or before the date that is 45 days after the Effective Date. The Professional Fees shall be paid from Cash on hand by the Plan Administrator.

3.04 **Statutory Fees**. On the Effective Date, the Debtors shall make all payments required to be paid to the U.S. Trustee pursuant to § 1930 of Title 28 of the United States Code. All fees payable pursuant to § 1930 of Title 28 of the United States Code after the Effective Date shall be paid by the Plan Administrator on a quarterly basis until the Chapter 11 Cases are closed, converted, or dismissed.

## ARTICLE IV
## DESIGNATION OF CLASSES

4.01 **Classification**. Claims and Equity Interests are classified for all purposes, including voting, confirmation, and Distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (Deemed to Accept) |
| Class 2 | Secured Claims | Unimpaired | No (Deemed to Accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Equity Interests | Impaired | No (Deemed to Reject) |

## ARTICLE V
## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

5.01 **Class 1: Priority Non-Tax Claims**.

Except to the extent that a holder of an Allowed Priority Non-Tax Claim has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed and (iii) the date for payment provided by any agreement or understanding between the Debtors and the holder of such Claim.

5.02 **Class 2: Secured Claims**.

Except to the extent that a holder of an Allowed Secured Claim agrees to a different treatment, each holder of an Allowed Secured Claim shall receive, in full satisfaction of such Allowed Secured Claim, at the sole option of the Plan Administrator, either (i) Cash in an amount equal to one hundred percent (100%) of the amount of such Allowed Secured Claim, (ii)

the Collateral securing such Allowed Secured Claim, or (iii) such other Distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code.

    5.03   **Class 3: General Unsecured Claims**.

    a.   Class 3 consists of General Unsecured Claims that exist against the Debtors. Each Holder of an Allowed Class 3 Claim shall receive, in full and final satisfaction of such Allowed Claim, and subject to § 5.03(b) of the Plan, its *pro rata* share of Cash held by the Estates after (i) payment on account of claims specified in Article III of this Plan, (ii) payment on account of Allowed Class 1 Claims and Allowed Class 2 Claims, and (iii) satisfaction of and reservation for any remaining expenses of the Estates, including any Professional Fees and Post Effective Date Fees and Expenses.

    b.   Distributions to Holders of Allowed Class 3 Claims shall be made by the Plan Administrator. Holders of Allowed Class 3 Claims shall receive their *pro rata* share of the Distributions set forth in this Section based upon the total amount of all Allowed and Disputed Class 3 Claims pending at the time of such Distribution. No Distribution shall be made in respect of any Disputed Class 3 Claim. The *pro rata* portion of the funds applicable to each Disputed Class 3 Claim shall be withheld unless and until such Claim becomes an Allowed Claim. The *pro rata* portion of the funds withheld in respect of any Disputed Class 3 Claim which is subsequently Disallowed shall be distributed to Allowed Class 3 Claims pursuant to the terms of this Plan.

    c.   The Plan Administrator shall make subsequent Distributions to Holders of Allowed Class 3 Claims to the extent there are sufficient funds available which are not required to be withheld for Disputed Claims and projected Post Effective Date Fees and Expenses. Subsequent Distributions will be made first to Holders of Disputed Class 3 Claims that have become Allowed Claims until they have received the same percentage on their claims as other Allowed Claims and then *pro rata* to all Holders of Allowed Class 3 Claims.

    d.   The Plan Administrator shall continue to make Distributions to Holders of Allowed Class 3 Claims until all Allowed Class 3 Claims have been paid in full or until a final decree has entered in the Chapter 11 Cases. The timing and amount of Distributions to Holders of Allowed Class 3 Claims shall be made in the Plan Administrator's discretion.

    5.04   **Class 4: Equity Interests**. Class 4 Equity Interests shall be cancelled and shall not receive anything under this Plan.

    5.05   **Cramdown**. If any class of Claims fails to accept the Plan in accordance with § 1126(c) of the Bankruptcy Code, the Bankruptcy Court may confirm the Plan in accordance with § 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly with respect to any non-accepting, impaired Class.

# ARTICLE VI
# PROVISIONS REGARDING RESOLUTION OF CLAIMS
# AND DISTRIBUTIONS UNDER THE PLAN

6.01   **Method of Distributions under the Plan.**

a.   In General. Subject to Bankruptcy Rule 9010, all Distributions under the Plan shall be made to the Holders of each Allowed Claim at the address of such Holder as listed on the Schedules or Proof of Claim, as applicable. Payments to be made under the Plan on the Effective Date shall be made by the Debtors.

b.   Distributions of Cash. The Plan Administrator shall maintain a post-Effective Date bank account in compliance with Bankruptcy Code § 345 for payments made under the Plan. Post-Effective Date Distributions under the Plan shall be made by the Plan Administrator. Such Distributions shall be made by check. All checks for Distribution shall be negotiated within 120 days of the date of such check, after which such check shall be void. The Holder of an Allowed Claim that does not negotiate payment within the 120-day period shall have one year after the check becomes void to assert payment on account of its claim pursuant to this Plan, after which time its Claim shall be reduced to zero. At such time, the Plan Administrator shall no longer be obligated to reserve for such Claim or make any further Distributions in respect of such Claim.

c.   Timing of Distributions. Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

d.   Tax Withholding. Distributions to Holders of Allowed Claims (including Allowed Class 3 Claims) shall be net of amounts required to be withheld pursuant to applicable state and federal wage or backup withholding requirements.

6.02   **Objections to Claims.**

a.   After the Effective Date, Objections to Claims may be made, and Objections to Claims made previous thereto shall be pursued, only by the Plan Administrator. The deadline for the Plan Administrator to file Objections to Claims shall be six months after the Effective Date, subject to extension by motion to the Court.

b.   After the Effective Date, the Plan Administrator may settle any Disputed Claims where the proposed Allowed Claim is to be less than $200,000 without notice and a hearing and without an order of the Bankruptcy Court. All other settlements shall be subject to notice and a hearing pursuant to § 102(1) of the Bankruptcy Code and Final Order of the Bankruptcy Court approving the Settlement.

6.03   **Reserves for Disputed Claims.** If any Claim is a Disputed Claim, no Distribution provided hereunder shall be made on account of such Claim unless and until said Disputed Claim becomes an Allowed Claim. In the event a Distribution is made while there is a Disputed Claim, the Distribution that would be paid on account of the Disputed Claim shall be

withheld until the Claim is Allowed or Disallowed. If the Claim is Allowed, the Holder of the Allowed Claim will receive its withheld Distribution.

6.04 **Claims Estimation**. The Plan Administrator may at any time request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to § 502(c) of the Bankruptcy Code, regardless of whether the Plan Administrator previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time concerning any objection to any Claim, including during the pendency of any appeal relating to any such Objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the aforementioned procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism pursuant to this Plan or approved by the Bankruptcy Court.

6.05 **Claims Allowance**. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Plan Administrator shall have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date. All Claims of any entity, subject to § 502(d) of the Bankruptcy Code, shall be deemed Disallowed as of the Effective Date unless and until such entity pays in full the amount that it owes the Debtors.

## ARTICLE VII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01 **Assumption or Rejection of Executory Contracts and Unexpired Leases**. Pursuant to §§ 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between any of the Debtors and any party that have not been previously assumed pursuant to an order of the Bankruptcy Court shall be deemed rejected on the Effective Date.

7.02 **Claims Based on Rejection of Executory Contracts or Unexpired Leases**. With respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Section 7.01 of this Plan, the bar date to file Proofs of Claim in these Cases shall be reopened for a period of 28 days after the Effective Date, and all such Proofs of Claim must be filed with the Bankruptcy Court during that time. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Section 7.01 of this Plan for which a Proof of Claim is not timely filed within that time period shall be forever barred from assertion against the Estates, their successors and assigns, or their assets and properties, unless otherwise ordered by the Bankruptcy Court or as otherwise provided herein.

# ARTICLE VIII
# OTHER MEANS FOR IMPLEMENTATION AND EFFECT OF CONFIRMATION OF PLAN

8.01 **Term of Bankruptcy Injunction or Stays.** All injunctions or stays provided for in this case under §§ 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect.

8.02 **Plan Administrator.**

    a. <u>Appointment</u>. As of the Effective Date, Ronald J. Friedman, a partner at Silverman Acampora LLP, shall be appointed Plan Administrator. The Plan Administrator shall be compensated at a rate of $5,000 per month.

    b. <u>Powers and Duties</u>. Subject to the consent of the Post Effective Date Committee in addition to any other powers described in this Plan, the powers and duties of the Plan Administrator consist of the following:

        i. To take control of, preserve, and convert to Cash property of the Estates, subject to the terms of this Plan;

        ii. To investigate and prosecute or abandon all Causes of Action belonging to or assertible by the Estates, including Avoidance Claims belonging to or assertible by the Estates;

        iii. To review and object to Claims filed against the Debtors;

        iv. To abandon, discontinue, dismiss, amend, settle, compromise, negotiate or otherwise resolve all disputes, including all Causes of Action, Avoidance Claims and Objections to Claims;

        v. To make Distributions on account of all Allowed Claims consistent with the terms of this Plan;

        vi. To retain persons and professionals to assist in carrying out the powers and duties enumerated pursuant to this Plan;

        vii. To enter into contracts as necessary to assist in carrying out the powers and duties enumerated pursuant to this Plan;

        viii. To pay expenses incurred in carrying out the powers and duties enumerated pursuant to this Plan, including professional fees incurred after the Effective Date;

        ix. To hire employees and/or terminate current employees of the Debtors;

        x.        To the extent the Plan Administrator deems necessary, to take all necessary actions to assure that the corporate existence of the Debtors remain in good standing until entry of a final decree closing the Chapter 11 Cases;

        xi.        To open and maintain bank accounts and deposit funds and draw checks and make disbursements in accordance with the Plan;

        xii.        To effectuate any of the provisions in this Plan;

        xiii.        At the appropriate time, to ask the Bankruptcy Court to enter the final decree; and

        xiv.        To execute all documents appropriate to convey assets of the Estates consistent with the terms of this Plan.

        c.        <u>Causes of Action</u>.  Except as otherwise provided in the Plan, and except the Blue Stripe Acquired Causes of Action, as of the Effective Date, pursuant to § 1123(b)(3)(B) of the Bankruptcy Code, any and all Causes of Action accruing to the Debtors, or the Debtors in their capacity as debtors-in-possession, and not released or compromised pursuant to this Plan, including, without limitation, Avoidance Claims, shall remain assets of the Estate, and the Plan Administrator shall have the authority to prosecute such Causes of Action for the benefit of the Estates.  On and after the Effective Date, the Plan Administrator shall have the authority to abandon, discontinue, dismiss, amend, settle, compromise, negotiate or otherwise resolve all such Causes of Action in accordance with the terms of the Plan.  The Vernon Claims shall be deemed waived unless the Plan Administrator files them on or before November 15, 2015.  The authority of the Plan Administrator set forth in this section is subject to the consent of the Post Effective Date Committee.

        d.        <u>Exculpation for the Plan Administrator</u>.  Neither the Plan Administrator nor any of his designees, retained professionals or any duly designated agent or representative shall be liable for anything other than such person's own acts as shall constitute willful misconduct or gross negligence in the performance (or nonperformance) of its duties, or acts contrary to the express terms of this Plan.  The Plan Administrator may, in connection with the performance of his functions, consult with counsel, accountants and its agents, and may reasonably rely upon advice or opinions received in the course of such consultation.  If the Plan Administrator determines not to consult with counsel, accountants or its agents, such determination shall not in itself be deemed to impose any liability on the Plan Administrator, or his designees.

        e.        <u>Termination of Appointment of Plan Administrator</u>.  The Plan Administrator's appointment shall terminate upon the earlier of payment in full of the Allowed Class 3 General Unsecured Claims or entry of a final decree closing the Chapter 11 Case, at which time the Plan Administrator shall have no powers and duties.

8.03   **Vesting of Assets**.

  a. Except as provided in this Plan, on the Effective Date the property of the Estates shall remain vested in the Estates, or vest in the Estates, as the case may be, until entry of the final decree in this case as provided in the Plan.

  b. As of the Effective Date, except as otherwise expressly provided in the Plan, all property of the Debtors shall be free and clear of all liens, claims and interests of Holders of Claims or Equity Interests.

8.04 **Creditors' Committee**. As of the Effective Date, the Creditors' Committee shall be dissolved and all members of the Creditors' Committee shall have no further rights or duties arising from such membership, provided, however, that the Creditors' Committee shall exist after such date with respect solely to the final application for Professional Fees and the hearing regarding the same.

8.05 **Post Effective Date Committee**. On the Effective Date, a committee shall be formed comprised of those members of the Creditors' Committee willing to serve (the "Post Effective Date Committee"). All actions taken by the Plan Administrator shall be subject to the consent of the Post Effective Date Committee.

8.06 **Corporate Existence of the Debtors.** To the extent necessary, as of the Effective Date, the Plan Administrator shall maintain the Debtors' good standing as corporations under the laws of the states of their incorporation until and unless appropriate documents are filed dissolving the Debtors.

8.07 **Substantive Consolidation of Debtors' Estates**.

  a. The Plan seeks substantive consolidation of the Debtors for all purposes and actions associated with confirmation and consummation of the Plan, including without limitation, for purposes of voting and confirmation. The Plan shall serve as a motion by the Debtors seeking entry of an order by the Bankruptcy Court substantively consolidating the Debtors' Estates and the Confirmation Order authorizing substantive consolidation shall constitute an Order of the Bankruptcy Court approving the substantive consolidation of the Debtors. On the Confirmation Date, and effective on and after the Effective Date, the Estate of each of the Debtors shall be substantively consolidated into the Estate of FPH for all purposes associated with confirmation and consummation of the Plan, including, without limitation, for purposes of voting and confirmation. In the event that the Bankruptcy Court substantively consolidates some but not all of the Debtors, the Debtors reserve the right to proceed with confirmation with no or partial substantive consolidation consistent with the Bankruptcy Court's order.

  b. On and after the Effective Date, (a) all assets and liabilities of the Debtors shall be treated as though they were merged into the FPH Estate, (b) for all purposes associated with confirmation, including, without limitation, for purposes of tallying acceptances and rejections of the Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate, and (c) each and every Claim filed or to be filed in the Chapter

11 Cases of the Debtors shall be deemed filed against the Debtors, and shall be Claims against and obligations of the Debtors.

8.08  **No Discharge**. Pursuant to Bankruptcy Code § 1141(d)(3), the Confirmation Order will not discharge the Debtors of any debts.

8.09  **Preservation of Setoff Rights**. On and after the Effective Date, rights of setoff pursuant to Bankruptcy Code § 553 shall be preserved. After the Effective Date, such setoff may be exercised pursuant to agreement of the Plan Administrator, on the one hand, and the affected Creditor, on the other hand. Any disputes regarding the right of setoff shall be determined upon motion before the Bankruptcy Court.

## ARTICLE IX
## EFFECTIVENESS OF THE PLAN

9.01  **Conditions Precedent to Effectiveness**. The Plan shall not become effective unless and until the following have been satisfied:

    a.  The Confirmation Order, in form and substance reasonably satisfactory to the Debtors and the Creditors' Committee, shall have been entered by the Bankruptcy Court;

    b.  There is no stay or injunction in effect with respect to the Confirmation Order; and

    c.  14 days shall have passed since the Confirmation Order has been entered by the Bankruptcy Court.

## ARTICLE X
## RETENTION OF JURISDICTION

10.01  **Bankruptcy Court Jurisdiction**. The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, §§ 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

    a.  To determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of Claims resulting therefrom;

    b.  To determine any and all adversary proceedings, applications and contested matters;

    c.  To determine any Objection to Claims and Administrative Expense Claims;

    d.  To approve settlements between the Plan Administrator and the Holder of a Disputed Claim;

  e. To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by § 1142 of the Bankruptcy Code;

  f. To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

  g. To determine all applications for compensation and reimbursement of expenses of Professionals under §§ 330, 331 and 503(b) of the Bankruptcy Code;

  h. To determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

  i. To determine disputes arising in connection with the recovery of all assets of the Debtors and property of the Estates, wherever located;

  j. To determine matters concerning taxes in accordance with §§ 346, 505 and 1146 of the Bankruptcy Code;

  k. To determine any other matter not inconsistent with the Bankruptcy Code; and

  l. To enter a final decree closing the Chapter 11 Cases.

## ARTICLE XI
## MISCELLANEOUS PROVISIONS

  11.01 **Effectuating Documents and Further Transactions**.  The Plan Administrator is authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any notes or securities pursuant to the Plan.

  11.02 **Aid in Implementation of Plan**.  The Bankruptcy Court may direct the Plan Administrator, the Debtors and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effect the Plan, and to perform any other act necessary to consummate the Plan.

  11.03 **Exculpation**.  The Debtors, any of their employees, advisors, counsel, and agents, and the Creditors' Committee and its counsel, shall neither have nor incur any liability to any Holder of a Claim, or any party acting or asserting a claim through a Holder of a Claim, for any act or omission in connection with, related to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Debtors and the Creditors' Committee shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

11.04 **Post-Effective Date Fees and Expenses**. From and after the Effective Date, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, the reasonable fees and expenses of professional persons incurred after the Effective Date by the Plan Administrator or the Post Effective Date Committee shall be paid by the Plan Administrator, including, without limitation, those fees and expenses incurred in connection with the implementation and consummation of the Plan.

11.05 **Post-Effective Date Statutory Fees**. All fees payable pursuant to § 1930 of Title 28 of the United States Code incurred after the Effective Date shall be paid in accordance with applicable law. The Plan Administrator shall submit post-confirmation reports in compliance with applicable law.

11.06 **Amendment or Modification of the Plan**. Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time before the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of §§ 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with § 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan as altered, amended, or modified satisfies the requirements of §§ 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under § 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A Holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such Holder.

11.07 **Compromise and Settlement of Claims and Controversies**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, Distributions, releases and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, interests and controversies resolved pursuant to the Plan or relating to the contractual, legal and subordination rights that a Holder of a Claim or interest may have with respect to any Claim or interest, or any Distribution to be made on account of such Claim or interest. The entry of the Confirmation Order shall constitute the Court's approval of the compromise or settlement of all such Claims, interests and controversies, as well as a finding by the Court that such compromise or settlement is in the best interests of the Debtors, their Estates and Holders of Claims and interests and is fair, equitable and reasonable.

11.08 **Release of Liens in Cash**. On the Effective Date, all Liens against or asserted against the Debtors' Cash shall be deemed fully released and discharged.

11.09 **Severability**. In the event that the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder or Holders of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness, or unenforceability of any such provision shall not limit or affect the enforceability and operative effect of any other provision of the Plan.

11.10 **Revocation or Withdrawal of the Plan**. The Debtors shall have the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtors revoke or withdraw the Plan before the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors.

11.11 **Binding Effect**. The Plan shall be binding upon and inure to the benefit of the Debtors and the Holders of Claims and Equity Interests and their respective successors and assigns.

11.12 **Notices**. To be effective, all notices, requests and demands to or upon the Debtors or the Plan Administrator shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission or electronic mail, when received, addressed as follows:

*If to the Debtors:*

> Fresh Produce
> c/o Brownstein Hyatt Farber Schreck, LLP
> Michael J. Pankow, Esq.
> Joshua M. Hantman, Esq.
> 410 17th Street, Suite 2200
> Denver, CO 80202
> Facsimile: 303-223-1111
> E-mail: mpankow@bhfs.com; jhantman@bhfs.com

*If to the Plan Administrator:*

> Ronald J. Friedman, Esq.
> Silverman Acampora LLP
> 100 Jericho Quadrangle - Suite 300
> Jericho, New York 11753
> E-mail: RFriedman@SilvermanAcampora.com

11.13 **Governing Law**. Except to the extent the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or other federal law is applicable, or to the extent the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Colorado without giving effect to the principles of conflicts of law of such jurisdiction.

11.14 **Allocation of Plan Distributions Between Principal and Interest**. To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

July 31, 2015

                    **FRESH PRODUCE HOLDINGS, LLC;**
                    **FRESH PRODUCE RETAIL, LLC;**
                    **FRESH PRODUCE SPORTSWEAR, LLC;**
                    **FRESH PRODUCE OF ST. ARMANDS, LLC;**
                    **FP BROGAN-SANIBEL ISLAND LLC; AND**
                    **FRESH PRODUCE COCONUT POINT, LLC**

                    Debtors and Debtors-in-Possession

                By:   r2 consulting group, LLC, a Colorado
                        limited liability company, its manager

                    By: _[signature]_
                    Name: Thomas M. Kim
                    Title:  Managing Director

APPROVED AS TO FORM:

**BROWNSTEIN HYATT FARBER SCHRECK, LLP**

By: _[signature]_
Michael J. Pankow, Esq.
Joshua M Hantman, Esq.
Rafael R. Garcia-Salgado, Esq.
410 17th Street, Suite 2200
Denver, CO 80202
Phone: (303) 223-1100
Fax: (303) 223-1111
Email: mpankow@bhfs.com
            jhantman@bhfs.com
            rgarcia@bhfs.com

**Attorneys for the Debtors**